UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| JOHNNIE SIMS-MADISON, | : | |
| | : | |
| Plaintiff, | : | Case No. 4:20-cv-00071 |
| | : | |
| vs. | : | |
| | : | Sr. Judge Joseph H. McKinley, Jr. |
| DANA COMMERCIAL VEHICLE MANUFACTURING, LLC, | : | |
| | : | |
| | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Dana Commercial Vehicle Manufacturing, LLC ("Dana") requests that the Court grant it summary judgment under Fed. R. Civ. P. 56 on Plaintiff Johnnie Sims-Madison's claims. It submits there are no genuine issues of material fact and that judgment in its favor is appropriate as a matter of law. Dana relies on the following memorandum and the discovery material filed in support of this motion.

Respectfully submitted,

*/s/ Brian G. Dershaw*
Brian G. Dershaw
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Tel.: 513-381-2838
Fax: 513-381-0205
bdershaw@taftlaw.com

Trial Attorney for Defendant

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| JOHNNIE SIMS-MADISON, | : | |
| | : | |
| Plaintiff, | : | Case No. 4:20-cv-00071 |
| | : | |
| vs. | : | |
| | : | Sr. Judge Joseph H. McKinley, Jr. |
| DANA COMMERCIAL VEHICLE | : | |
| MANUFACTURING, LLC, | : | |
| | : | **DEFENDANT'S MEMORANDUM** |
| | : | **IN SUPPORT OF MOTION FOR** |
| | : | **SUMMARY JUDGMENT** |
| Defendant. | : | |

## I.  INTRODUCTION

Defendant Dana Commercial Vehicle Manufacturing, LLC ("Dana") terminated the employment of Plaintiff Johnnie Sims-Madison in February 2019 after her African American and Caucasian coworkers complained about her disrespectful, bullying, and profane conduct and words directed at them.  That was the last straw for Ms. Sims-Madison, who was under a final written warning prohibiting those exact behaviors.  Thirteen months later, she filed this lawsuit alleging race and age discrimination and wrongful termination.  Dana has denied these claims and now requests that the Court dismiss them.

## II.  RELEVANT FACTS

Dana manufactures heavy-duty truck axles.  (Declaration of David J. Greenham attached as Exhibit 1 ("Greenham Decl."), ¶ 2).  Ms. Sims-Madison joined Dana in 2003, working most of her tenure as a material handler.  (DN 18, Deposition of Johnnie Sims-Madison, January 5, 2021 ("DN 18"), pp. 13:9—10; 15:5—12).  A material handler moves parts.  (DN 18, p. 15:13—22).  Ms. Sims-Madison was also a member of the United Steel, Paper and Forestry, Rubber,

Manufacturing, Energy, Allied Industrial and Service Workers International Union, Local 9443-2 ("Union"), which represented certain Dana employees. (DN 18-4).

Throughout her time with Dana, Ms. Sims-Madison's coworkers—African American and Caucasian—would complain to management about her conduct towards them. (DN 18, pp. 18:9—18 (alleged to have called her coworker a "bitch"); 33:12—19 (using bad language and verbally harassing another coworker); 37:2—15 ("bad attitude"; juvenile and irritating behavior); DN 18-13 and DN 18-14). With each report, Dana afforded Ms. Sims-Madison the opportunity to respond, and the Union could grieve any discipline imposed on her, some of which she won and some she lost. (DN 18, pp. 20:15—21:2; 26:8—16; 42:11—18).

On average, Ms. Sims-Madison recalls she was "called to the office" because of coworker complaints or other conduct less than once yearly. (DN 18, p. 46:8—14). No matter the reason for, or substance of, the allegations (she "cannot tell you what they're thinking or tell what caused it"), she believes most were racially motivated. (DN 18, pp. 44:16—24; 43:7—10).

What is more, none of the above incidents involved David Greenham, Dana's Human Resources Manager, who did not join Dana until 2015, and who issued Ms. Sims-Madison's termination letter. (Greenham Decl., ¶¶ 1 and 3). After Mr. Greenham's arrival, the complaints against Ms. Sims-Madison continued.

In July 2017, Dana employees who were visiting the Henderson facility reported that Ms. Sims-Madison had been disrespectful. (DN 18, pp. 91:7—23; 93:19—95:23; DN 18-5). She believes this related to her directing the words "ass" and "fucking idiots," which she denies saying, and "hell," which she admits, towards them. (DN 18, pp. 92:10—94:7). Dana suspended Ms. Sims-Madison for one day for her conduct. (DN 18-5).

Just 13 months later, there were more complaints about Ms. Sims-Madison's disrespectful behavior. This time, her coworkers accused her of calling an employee a "mother fucker," and calling others "snitches" or an "f – snitch." (DN 18, pp. 65:4—70:9; DN 18-3). Black and white employees witnessed or reported these events, but, unlike the other situations, Ms. Sims-Madison ascribes no racial animus to them. (DN 18, pp. 71:4—73:5).

After receiving the report, Mr. Greenham met with Ms. Sims-Madison and Union president, Terry Yancy, to discuss the allegations. (DN 18, pp. 83:25—84:16). Ashley Robertson, HR Generalist, and Paul Laune, Dana's Operations Manager, were also present. (*Id.*). Ms. Sims-Madison admitted saying "snitch," denying the rest. (DN 18, pp. 88:9—89:3; 93:13—14). She also exclaimed she just wanted to work five more months, and then she would retire. (DN 20-1, Transcript of Meeting, September 6, 2018 ("DN 20-1"), pp. 56:4—23; 63:15—16)[1].

Given the allegations, at first Dana suspended Ms. Sims-Madison for five days with the intent to terminate and referred her to the employee assistance program for her behavioral issues. (DN 18-3 and DN 18-7). Dana then reduced the suspension to one day and reinstated her to work because of the information she provided in the investigation, her 15 years of service to Dana, and her declaration that she intended to retire in January 2019. (DN 18-3 and DN 18-8). Dana also put Ms. Sims-Madison on a final warning, prohibiting any further disrespectful behavior. (DN 18-8).[2] Ms. Sims-Madison and the Union accepted the discipline; neither grieved it. (DN 18, p. 109:9—12).

---

[1] Ms. Sims-Madison surreptitiously recorded this meeting and others against Dana company policy. For summary judgment, Dana submits this transcript and recording without waiving any right to seek its exclusion or to use it, including as after-acquired evidence, in response to the Complaint. The recording has been separately filed at DN 21.

[2] Ms. Sims-Madison, during her deposition, appeared to question whether the September 14, 2018 letter at DN 18-8 is what she received, as she recalls signing the letter, and it does not have her signature. (DN 18, pp. 109:9—12; 131:21—134:10). That said, Ms. Sims-Madison produced the same letter. (DN 18-3, PageID #180).

3

Three days later, one of Dana's non-Union, white, salaried customer service representatives reported that Ms. Sims-Madison disrespectfully ignored her and drove her fork truck away when she tried to give her a directive on a past-due hot job. (DN 18, pp. 120:5—24). Dana asked Ms. Sims-Madison what happened. (*Id.*; *see also* pp. 121:22—122:7). After hearing Ms. Sims-Madison's version, Dana did not discipline her. (DN 18, p. 122:8—10).

On October 16, another complaint came in about Ms. Sims-Madison's behavior. (DN 18, p. 167:20—25). This time, a black supervisor reported her. (DN 18, p. 168:2—8). Dana listened to Ms. Sims-Madison's response. (*Id.*). And again it imposed no discipline. (*Id.*).

Then, in February 2019, coworkers—African American and Caucasian—complained about Ms. Sims-Madison conduct towards them (e.g., harassing behavior, intentionally blocking the aisle, and directing profanity at them). (DN 18, pp. 128:15—131:20). Dana advised Ms. Sims-Madison and her Union steward, Paul Pippin, of these complaints. (DN 18, pp. 134:21—135:17). Ms. Sims-Madison gave her side of the story. (DN 18, p. 143:17—23). Dana suspended her pending investigation. (DN 18, p. 136:14—17).

After concluding the investigation, Dana terminated Ms. Sims-Madison by letter dated March 18, 2019, effective February 6, 2019, because it found she had violated her final warning. (DN 18, pp. 147:23—148:4; *see also* DN 18-3). She neither grieved nor followed up with the Union about grieving her termination. (DN 18, p. 148:5—20).

Ms. Sims-Madison, a 68-year-old African American woman, then sued, alleging race and age discrimination and wrongful termination under the Kentucky Civil Rights Act ("KCRA"), KRS Chapter 344. (DN 1-3, Complaint). For the reasons below, Dana requests that this Court grant it summary judgment on Ms. Sims-Madison's claims.

4

### III. ARGUMENT

### A. Ms. Sims-Madison Cannot Make a Prima Facie Case of Race or Age Discrimination or Show Pretext.[3]

#### 1. Plaintiff's Burden.

Kentucky law prohibits an employer from discharging an employee because of her race or age. 42 U.S.C. § 2000e-2(a)(1); KRS 344.040(1)(a).[4] When, as here, there is no direct evidence of discrimination, these claims will be analyzed using the *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973) burden-shifting approach, as modified in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252—53 (1981). *See also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (burden shifting for age discrimination claims).

To start, the plaintiff must establish a prima facie case of race or age discrimination. *Id.* If she succeeds, an inference of discrimination arises, and the burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its actions. *Burdine*, 450 U.S. at 252—53; *Blizzard*, 698 F.3d at 283. If the defendant articulates a nondiscriminatory reason for its actions, the plaintiff next has the burden of production to prove the proffered reason is pretext. *McDonnell Douglas*, 411 U.S. at 802; *Blizzard*, 698 F.3d at 283 (quoting *Sutherland v. Mich. Dep't. of Treasury*, 344 F.3d 603, 615 (6th Cir. 2003)).

At this stage, the plaintiff must produce "sufficient evidence from which a jury could reasonably reject the employer's explanation for the termination." *Blizzard,* 698 F.3d at 285

---

[3] Kentucky courts interpret race and age discrimination claims under the KCRA the same as those under Title VII, 42 U.S.C. 20000e-2, et seq. and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. 621 et seq. *Smith v. Leggett Wire Co.*, 220 F.3d 752, 758 (6th Cir. 2000) (race discrimination); *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 393 (6th Cir. 2008) (age discrimination). Kentucky courts recognize that the same federal framework applies under Title VII cases and ADEA cases. *Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 495 (Ky. 2005). Thus this Court is to use the federal standards for evaluating Ms. Sims-Madison's race and age discrimination claims.

[4] The KCRA is interpreted "in consonance with Title VII of the Federal Civil Rights Act of 1964." *American General Life & Accident Ins. Co.,* 74 S.W.3d 688, 691 (Ky. 2002).

(quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)). A plaintiff can accomplish this by proving that the proffered reason (1) had no basis in fact; (2) did not actually motivate the discharge; or (3) was insufficient to motivate discharge. *Id.* (citation omitted).

Above all, "[t]hroughout this burden-shifting approach, the plaintiff continues to bear the ultimate burden of proving, by a preponderance of the evidence, the intent to discriminate." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)).

As shown below, Ms. Sims-Madison has failed to meet her burden of proof as to both race and age discrimination.

### 2. Ms. Sims-Madison's Race Discrimination Claim Should Be Dismissed.

To establish a prima facie case of race discrimination, a plaintiff must show "(1) he or she was a member of a protected class; (2) he or she suffered an adverse employment action; (3) he or she was qualified for the position; and (4) he or she was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees." *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004); *see also Wilson v. Cleveland Clinic Found.*, 579 F. App'x 392, 396 (6th Cir. 2014) (citation omitted).

Simply put, Ms. Sims-Madison's claim fails because she cannot show any circumstances that would support an inference of race discrimination. She has failed to offer record evidence that Dana replaced her with someone outside her protected class.

In fact, Dana did not replace her; it distributed her duties among others. (Greenham Decl., ¶ 4). "A person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another

6

employee is hired or reassigned to perform the plaintiff's duties." *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990) (citation omitted).

All of that may be true, but Ms. Sims-Madison speculates Dana replaced her with Steve Leachman, who is white and 55 years old, as she believes he had bid for her job. (DN 18, pp. 185:21—186:8; 190:2—13). Put differently, she asserts Dana filled a vacancy using the seniority provisions of the collective bargaining agreement. This means that Dana would have had no knowledge or control over any possible replacement, and thus it could have no discriminatory motive. *See Mlinaric v. Parker Hannifin Corp.*, 853 F.2d 927 (6th Cir. 1988). So even if the Court would give Ms. Sims-Madison the benefit of the doubt on whether Dana replaced her position, she cannot show Dana did it outside her protected class.

Likewise, Ms. Sims-Madison failed her burden of production to prove with record evidence that anyone (much less someone white) was under a final warning for disrespectful behaviors, breached that warning, and was not discharged. (Greenham Decl., ¶ 5). There were no similarly situated, non-protected employees treated better than her. *See Ashford v. Tennessee Bd. of Regents*, No. 3:16-CV-1032, 2017 WL 5884789, at *3 (M.D. Tenn. Nov. 29, 2017) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 n.5 (6th Cir. 1992)).

Still, she points to a laundry list of Dana employees she believes were treated better. By her own admissions, and by the facts set out below, none is similarly situated to her, and none received better treatment.

Before moving to her perceived comparators, it is important to understand what one is. These must be employees "similarly situated *in all* respects" to the plaintiff. *Mitchell v. Toledo Hosp.*, 964 F.2d at 583. Stated another way, "the individuals with whom the plaintiff seeks to compare [her] treatment must have dealt with the same supervisor, have been subject to the same

7

standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Smith v. Leggett Wire Co.,* 220 F.3d 752, 762 (6th Cir. 2000) (citation omitted).

No evidence supports Ms. Sims-Madison's contention that Dana treated her differently than similarly situated, non-protected employees. She propounded nothing in written discovery to this effect. (DN 18-2 and DN 18-3). Then, during her deposition, she put forwarded only what she heard about others. (DN 18, pp. 89:21—90:14; 109:21—110:19; 112:9—113:20; 114:13—116:18; 116:20—117:25; 149:21—150:10; 170:24—171:15; 171:25—174:14). First, this is inadmissible hearsay. *Back v. Nestle USA, Inc.*, 694 F.3d 571, 577 (6th Cir. 2012). Second, Ms. Sims-Madison cannot rely on herself to raise an issue of fact; she needs to produce record evidence. *Ashford*, 2017 WL 5884789, at *3 (citing *Mitchell*, 964 F.2d at 583 n.5). And, third, if Ms. Sims-Madison could overcome these flaws, no coworker she identified is similarly situated in "all of the relevant aspects." *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir.1998) (citations and quotations omitted).

Indeed, Ms. Sims-Madison presents not one employee in her classification under final warning for disrespectful behaviors, who breached that warning, and who was not discharged. Instead, she proxies her own opinions—and seemingly is asking that this Court do the same—for that of Dana's human resources department. Of course, "it is inappropriate for the judiciary to substitute its judgment for that of management." *Smith v. Leggett Wire Co.,* 220 F.3d at 763 (citations omitted). Moreover, many of her "comparators" were treated worse, committed conduct unlike what she had done, and were outside her classification or were in other positions.

### a. No comparator under a final warning was treated better.

To be a comparator, the employees must have been under a final warning, like Ms. Sims-Madison. *See, e.g.*, *Johnson v. TG Auto. Sealing Kentucky, LLC*, No. 5:10-CV-00117-R, 2011 WL 6292205, at *8 (W.D. Ky. Dec. 15, 2011); *Davis v. Target Corp.*, No. CIV.A.4:05CV105M, 2007 WL 29446, at *7 (W.D. Ky. Jan. 3, 2007) ("[A] plaintiff cannot prove that she is similarly situated with another employee who does not share her disciplinary history." (citations omitted)). The only employee remotely in Ms. Sims-Madison's circumstance was Carla Piper. She is white and over 20 years younger than Ms. Sims-Madison, and had received only one 3-day suspension with final warning before she was terminated for further disrespectful behaviors. (DN 18, pp. 109:21—110:22; 149:21—150:10; Greenham Decl., ¶ 9). So she was treated the same, if not worse, than Ms. Sims-Madison. She also is not a comparator because she was a supervisor (discussed below).

For the rest of the employees identified by Ms. Sims-Madison as having committed similar conduct, none was under a final warning and thus not one is relevant. For example, she contends, with no knowledge of the facts, that white Dana employee Jason Stone did not get disciplined for an argument he had with an African American coworker. Mr. Stone, however, was the accuser, and several employees' corroborated his allegations, which led to the accused's suspension. (Greenham Decl., ¶ 7).

Ms. Sims-Madison also mentions Kay Adams, a white woman whom Mr. Yancy brought to the office because he believed she had cussed at him. (DN 18, pp. 89:21—90:14). But Ms. Sims-Madison does not know whether Ms. Adams had any prior complaints about her behavior towards Mr. Yancy. (*Id.*). Nor did she know that Ms. Adams denied cussing but agreed that her

9

behavior was disrespectful and should not be repeated. (Greenham Decl., ¶ 8). Nothing suggests Ms. Adams and Ms. Sims-Madison had the same disciplinary history.

Finally, Ms. Sims-Madison challenges why a white, temporary employee was barred from Dana's property for a year and a black employee was only suspended when the two of them argued, and why Ms. Sims-Madison's white supervisor was suspended for a verbal altercation with an employee (although, she seems to believe this was justified: "I was shocked when I heard it. But they did suspend JP Bonds, and the next day he came in and quit.") (DN 18, pp. 115:3—116:18; 170:24—171:15).[5] There is no evidence showing these employees would be comparators. They appear to have been treated the same, if not worse, than Ms. Sims-Madison. And they too are outside her classification.

Because Ms. Sims-Madison was under a final warning and then violated that warning with additional disrespectful behaviors, she is not similarly situated to any of her proposed comparators.

      **b.**    **Employees who committed different misconduct are not similarly situated.**

More than a few of Ms. Sims-Madison's alleged comparators were accused of conduct unlike what led to her discharge, rendering them incomparable. *Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002). These are irrelevant to Ms. Sims-Madison and her claim. For example, she believes a 77-year-old maintenance employee received better treatment when he

---

[5] Ms. Sims-Madison alleges two employees received better treatment than her <u>after</u> her termination. Brenda Johnson, a white woman, she contends was "walk out of the plant, but allowed to come back the next day" after she cussed out another employee. (DN 18, p. 112:9—21). While her facts are incorrect, there was an incident with Ms. Johnson in August 2020. (Greenham Decl., ¶ 10). A supervisor had accused Ms. Johnson of insubordination when she walked away from him despite being asked to stop. (*Id.*). Ms. Johnson challenged her 3-day suspension, alleging she could not hear him. (*Id.*). She proved through a hearing test to be telling the truth, so Dana rescinded the suspension. (*Id.*). Next she claims that Jeff Brown cussed out an employee and received a three-day suspension. (DN 18, p. 112:12—15). This event occurred in September 2020, well after Ms. Sims-Madison's termination, and Dana, in fact, suspended Mr. Brown for five days because of disrespectful behaviors directed at his supervisor. (Greenham Decl., ¶ 11).

28705449v6

chose retirement[6] instead of termination after engaging in a physical altercation with another employee. (DN 18, pp. 168:19—169:9; 186:16—17; Greenham Decl., ¶ 6). She also complains about a 30-day suspension she believes employees received for engaging in a sex act, the discipline others received for attendance issues, and about write-ups employees received for work performance. (DN 18, pp. 116:20—117:25; 112:21—113:4; 171:25—174:14).

But Dana did not terminate Ms. Sims-Madison's employment for a physical altercation, a sex act, attendance, or work performance. It discharged Ms. Sims-Madison because of her continued disrespectful, disruptive, and inappropriate behavior in violation of her final warning. (DN 18, pp. 128:15—129:5; 131:3—134:8).[7]

### c. Ms. Sims-Madison did not have the same supervisors or job responsibilities as many of her alleged comparators.

Lastly, several of Ms. Sims-Madison's alleged comparators had different supervisors and were supervisors themselves (e.g., receiving clerk, supervisor)[8], eliminating them as comparators. *Smith v. Leggett Wire Co.,* 220 F.3d at 762—763. Many were in different positions (receiving clerk, supervisor, maintenance, and assembly).[9] Often, "employees with different job responsibilities may not be similarly situated." *Rutherford v. Britthaven, Inc.*, 452 F. App'x 667, 672 (6th Cir. 2011) (citing *Russell v. Ohio, Dep't of Admin. Servs.,* 302 F. App'x. 386, 391 (6th Cir. 2008)). Thus they too are not similarly situated to Ms. Sims-Madison, a material handler. But even if they were, not one had Ms. Sims-Madison's disciplinary history or committed the same conduct. (Greenham Decl., ¶ 5).

---

[6] Ms. Sims' Madison also had the option to retire. (DN 18, pp. 145:19—148:3).
[7] The final complaint that triggered Ms. Sims-Madison's termination was made by Ms. Sandra Catlett, an African American woman, who reported that the plaintiff refused to pull the parts that Ms. Catlett needed, even though Ms. Sims-Madison was assigned to pull the production. (DN 18, p. 131:3—20).
[8] (DN 18, pp. 115:3—116:18; 170:24—171:15; Greenham Decl., ¶ 9).
[9] (Greenham Decl., ¶¶ 6, 9, 10, and 11).

11

No matter how many employees Ms. Sims-Madison raises or stories she concocts, she cannot establish a prima facie case of race discrimination.

### 3. Ms. Sims-Madison's Age Discrimination Claim Should Be Dismissed.

Ms. Sims-Madison's age discrimination claim also must fail. To establish a prima facie case of age discrimination, a plaintiff must show: "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination." *Blizzard*, 698 F.3d at 283 (citation omitted). On top of this, the burden of persuasion is on the plaintiff to show that "age was the 'but-for' cause of the employer's adverse action." *Id.* (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)).

To begin, Ms. Sims-Madison can offer no evidence that age was the "but-for" cause of her termination. *See Blizzard v. Marion Tech. Coll.*, 698 F.3d at 283. Her own race claim makes clear that age is not the "but-for" cause of her termination. *Id.*; *Grubb v. YSK Corp.*, 401 F. App'x. 104, 113 (6th Cir. 2010); *Green v. Fid. Inv.*, 374 F. App'x. 573, 577 (6th Cir. 2010).

Beyond that, this claim fails because, as set forth above, Dana did not replace her. Nor is there any evidence that someone substantially younger than Ms. Sims-Madison who was under a final warning for disrespectful conduct, and who violated that warning, was not discharged. In fact, Ms. Sims-Madison did not try to suggest comparators for her age discrimination claim. As Ms. Sims-Madison testified, many people who work at Dana have 35-45 years of experience. (DN 18, p. 187:11—14).

When asked if anyone in management ever made age-related comments, Ms. Sims-Madison testified that Mr. Greenham and Ms. Robertson, between October 2018 and January 2019, asked her about her retirement date and the paperwork that would be needed. (DN 18, pp. 124:19—128:14). Her own Union leadership asked this as well. (*Id.*). Recall, Ms. Sims-

12

Madison had stated she would retire in January 2019, and that was part of her final warning letter. (DN 20-1, pp. 56:4—23, 63:15—16; DN 18-3 and DN 18-8). Ms. Sims-Madison never told anyone she had changed her mind. (DN 18, pp. 124:19—128:14). And she fully understands, based on her final warning, why they were asking about her retirement: "[b]ecause see, I had never paid any attention to the letter, and that made sense why everybody was asking the question." (DN 18, p. 128:12—14). None of this is improper.

Ms. Sims-Madison cannot establish a prima facie case of age discrimination.

### 4.     No Pretext.

Even if Ms. Sims-Madison could show some prima facie age or race discrimination claim, her complaint still fails. No evidence can prove Dana's legitimate nondiscriminatory reasons for her discharge were pretextual. Ms. Sims-Madison lost her job because she violated her final warning. She can advance nothing that would lead a factfinder to conclude otherwise.

"To carry her burden in opposing summary judgment, [Plaintiff] must produce sufficient evidence from which a jury could reasonably reject [Dana]'s explanation of why it" terminated her employment upon a clear violation of her final warning. *Chen v. Dow Chem. Co*., 580 F.3d 394, 400 (6th Cir. 2009) (citation omitted) (citing *Mickey v. Zeidler Tool and Die Co.,* 516 F.3d 516, 526 (6th Cir. 2008)). "Pretext is a commonsense inquiry: did the employer [take the adverse action against] the employee for the stated reason or not? This requires a court to ask whether the plaintiff has produced evidence that casts doubt on the employer's explanation, and, if so, how strong it is." *Id.* at 400, n. 4. Ms. Sims-Madison has provided no evidence that casts doubt on the reason for her discharge.

As to whether Ms. Sims-Madison's conduct warranted discharge, she merely disagrees with the allegations against her and she points to the "comparators" she believes committed

"similar" infractions.  Again, there is no evidence of any person of a different race or age, similarly situated in all material respects, whom Dana treated better.

The bottom line is that Dana's legitimate nondiscriminatory reasons for terminating Ms. Sims-Madison employment were not pretext for race or age discrimination.

## IV.  CONCLUSION

For all these reasons, Dana requests that this Court grant it summary judgment on Ms. Sims-Madison's claims.

Respectfully submitted,

*/s/ Brian G. Dershaw*
Brian G. Dershaw
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Tel:  (513) 381-2838
Fax: (513) 381-0205
bdershaw@taftlaw.com
Trial Attorney for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of February 2021, I filed the Motion for Summary Judgment using the Court's CM/ECF system, which will send electronic notice to the following:

Devan A. Dannelly
BIESECKER DUTKANYCH &
    MACER, LLC
101 North 7th St., Ste. 603
Louisville, KY 40203
ddannelly@bdlegal.com

*Attorney for Plaintiff*

          /s/ *Brian G. Dershaw*