UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:20-cv-00071-JHM

JOHNNIE SIMS-MADISON                                                                                    PLAINTIFF

V.

DANA COMMERCIAL VEHICLE MANUFACTURING, LLC            DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Dana Commercial Vehicle Manufacturing's Motion for Summary Judgment. [DN 22]. Fully briefed, this matter is ripe for decision. For the following reasons, the Motion for Summary Judgment is **GRANTED**.

**I. BACKGROUND**

Plaintiff Johnnie Sims-Madison is a 67-year-old African-American woman. [DN 1-3 at 2 ¶ 10]. She worked at Dana from October 2003 until she was terminated in February 2019. [DN 18 Pl. Dep. 13:9–10, 114:20–21]. Dana manufactures heavy-duty truck axles. [DN 22-1 ¶ 2]. Sims-Madison spent most of her time at Dana as a "Material Handler," which is an individual who moves parts. [DN 18 Pl. Dep. 15:5–15]. Sims-Madison was also a member of the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (United Steelworkers), Local 9443-2. [*Id.* at 22:12–23]. United Steelworkers has a collective bargaining agreement with Dana. [DN 26-1].

Article 10 of the agreement governs disciplinary action, which provides in relevant part the following:

> 10.00 Maintaining discipline is essential to the satisfactory and efficient operation of the plant. The Company reserves the right to discipline for just cause up to and including discharge. Just cause will be defined as any act not specifically authorized by any provision of this agreement which interferes with the orderly

1

and efficient operation of the Company's business. In maintaining discipline, the Company will determine whether a breach of discipline has occurred and what disciplinary action is appropriate. This action will be administered fairly and consistently. . . .

10.01 Disciplinary action will be taken within five (5) working days after the Company can determine the extent of the problem. Exceptions to the Company having just cause for disciplinary action must be filed in writing within five (5) working days after the time of such action or the employee will forfeit all rights under this section.

10.02 In all instances where the Company concludes that an employee's conduct justifies discharge he will first be suspended for not more than five (5) working days. The employee will be notified in writing, with a copy to the Grievance Committee Chairman, of the suspension, the intent to discharge, and his right to a hearing including the appropriate time limits.

. . .

Warning slips given in accordance with the foregoing constitute a part of an employee's general record. Such warnings will be declared inactive as a basis for compounding progressive discipline after the time element stipulated below, provided no additional warning slips have been issued.

| | | |
|---|---|---|
| Counseling | - | Twelve (12) months |
| Verbal Warning | - | Six (6) months |
| Written Warning | - | Nine (9) months |
| Suspensions | - | Twelve (12) months |

[*Id.* at 30].

While Sims-Madison has a disciplinary history that predates the events that led to her termination [DN 18 Pl. Dep. 18:15–19:21, DN 18-13, DN 18-14], the Court begins with July 2017. During this time David Greenham was the Dana Human Resources Manager. [DN 22 at 3]. In July 2017, Sims-Madison was suspended for one day because employees complained to Dana that Sims-Madison "spoke disrespectfully to two groups of Dana Employees." [DN 18-5]. Sims-Madison says that she was suspended for using two expletives. [DN 18 Pl. Dep. 91:25–92:2, 93:4–9]. She denied the allegations, except she did not deny saying one of the expletives. [*Id.* at 93:4–9, DN 18-5].

2

Over a year later, in late August 2018, Dana received complaints that Sims-Madison called employees "snitches" and that she used expletives. [DN 18-3 at 8–13]. As a result of the complaints, Greenham met with individuals including Sims-Madison and Terry Yancy, the union president, on September 6, 2018 to discuss the allegations. [DN 18 Pl. Dep. 10:4–20, 84:4–16]. Sims-Madison recorded the meeting with her phone. [*Id.* at 84:17–85:9; DN 20-1]. She admitted to using the word "snitches" and denied the rest of the allegations. [DN 18 Pl. Dep. 88:17–89:3, 93:10–14]. Sims-Madison also claimed that "I'm only going to be here for five more months" referring to her retirement. [DN 20-1 at 56:4–8].

On September 6, 2018, Greenham sent a letter to Sims-Madison which said that she was "suspended for five (5) days with intent to discharge from Dana Incorporated." [DN 18-7]. Greenham explained in the letter that she was being suspended because despite being warned in the past about "treating others in a respectful manner," employees were "still filing formal complaints about [her] disrespectful behavior and the language [she] use[s] and direct[s] at them." [*Id.*]. The suspension was effective beginning September 7, 2018. [*Id.*]. Later, on September 14, 2018, Greenham sent another letter to Sims-Madison reducing her suspension from five days to one day and a "final warning." [DN 18-8]. Greenham explained that the reduced suspension was warranted considering Dana's investigation, Sim-Madison's explanation of what happened, her 15 years of seniority, and her intention to retire in a few months.[1] [*Id.*]. The letter warned that if Sims-Madison was caught being "disrespectful" to others, she would be "subject to immediate termination." [DN 18-8].

A few days later, a white employee reported that Sims-Madison ignored her and drove her fork truck away when the employee tried to give Sims-Madison a directive. [DN 18 Pl Dep.

---

[1] Emails that Greenham sent about disciplining Sims-Madison shows that Dana had planned on reducing the suspension since September 6. [DN 26-2].

3

118:6–122:7]. After talking to Sims-Madison, Dana did not discipline her. [*Id.* at 122:8–10]. On October 16, a Black supervisor complained about Sims-Madison's behavior. [*Id.* at 168:2–4]. Dana did not discipline Sims-Madison. [*Id.* at 168:4–8].

Then, on February 6, 2019, Greenham notified Sims-Madison via a letter that he received "complaints about [her] behavior being loud and disruptive." [DN 18-9]. As a result, Greenham suspended Sims-Madison pending an investigation. [*Id.*]. Greenham claims that at the end of the February 6 meeting, Sims-Madison indicated that she would "consider retirement immediately in lieu of disciplinary action, if the Company would be willing to pay out all remaining vacation and the Union contractual lump sum increase . . . ." [DN 18-10].

After looking into Sims-Madison's request, on February 26, 2019, Greenham had an offer for Sims-Madison "which would resolve all claims and accommodate [her] request to retire." [*Id.*]. She never responded to the offer, although Greenham claims tracking information shows the document was left at Sims-Madison's front door on February 27. [*Id.*]. In a March 18, 2019 letter, Greenham explained that because Dana had not heard from Sims-Madison since February 26, Dana considered her inaction as a rejection of the offer. [*Id.*]. Greenham also said that because Dana's investigation of the complaints it received on February 6 revealed that she violated her "final warning" from September 14, 2018, Sims-Madison was terminated effective February 6, 2019. [*Id.*].

Sims-Madison sued Dana and United Steelworkers in Daviess County Circuit Court alleging race and age discrimination under the Kentucky Civil Rights Act (KCRA). [DN 1-3 at 1 ¶ 1]. Dana and United Steelworkers removed the case to this Court under the Court's diversity jurisdiction. [DN 1]. United Steelworkers moved to dismiss arguing that Sims-Madison's state-law claims were preempted and time barred under the Labor Management Relations Act.

[DN 9 at 2]. The Court granted the motion to dismiss United Steelworkers from the case. [*Id.* at 7]. Now Dana moves for summary judgment. [DN 22].

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the nonmoving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

## III. DISCUSSION

The KCRA makes it unlawful for an employer to terminate an individual because of their race or age. K.R.S. § 344.040(1)(a). "Claims brought under the KCRA are 'analyzed in the same manner'" as claims under Title VII of the Civil Rights Act of 1965 ("Title VII") and the Age Discrimination in Employment Act (ADEA). *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 393 (6th Cir. 2008) (citation omitted); *Smith v. Leggett Wire Co.*, 220 F.3d 752, 758 (6th Cir. 2000).

Claims of race and age discrimination are analyzed using the *McDonnell Douglas* burden-shifting framework when there is no direct evidence of discrimination. *See, e.g., Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014); *Geiger v. Tower Auto.*, 579 F.3d 614, 622 (6th Cir. 2009). Initially, the plaintiff must present evidence sufficient to establish a prima facie case of discrimination. *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802 (1973).

Once a plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the defendant articulates such a reason, the burden then shifts back to the plaintiff to establish that the proffered reason is pretext for unlawful discrimination. *Id.* at 804.

### A. Prima Facie Case

To establish a prima facie case for discrimination, a plaintiff must show that: (1) she is a member of a protected class; (2) was qualified for the job; (3) she suffered an adverse employment decision; and (4) was replaced by a person outside the protected class or treated differently than similarly situated nonprotected employees. *Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001) (citation omitted); *Smith v. Wrigley Mfg. Co.*, 749 F. App'x 446, 448 (6th Cir. 2018) (citation omitted). "In age-discrimination cases, the fourth element 'is modified to require replacement not by a person outside the protected class, but merely replacement by a significantly younger person.'" *Stearman v. Ferro Coals, Inc.*, No. 3:15-cv-31-DJH-DW, 2017 WL 5798781, at *3 (W.D. Ky. Nov. 28, 2017) (quoting *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003)). "Age differences of ten or more years have generally been held to be sufficiently substantial to meet the requirement of the fourth part of [an] age discrimination prima facie case." *Id.* (citation omitted). Dana seems to only dispute the fourth prong.

#### 1. Was Sims-Madison Replaced?

Sims-Madison claims that she was replaced by Steve Leachman, who is white and 55 years old. [DN 26 at 5]. Sims-Madison was 66 years old when she was fired. [*Id.*]. Dana contends that it did not replace Sims-Madison; instead, it spread her duties among other "Material Handlers" according to Greenham. [DN 22 at 7, DN 22-1 ¶ 4]. An age difference of

11 years might generally be sufficient to meet the requirement for the fourth prong of an age discrimination prima facie case. However, "[s]preading the former duties of a terminated employee among the remaining employees does not constitute replacement." *Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir. 1992).

Other than her conclusory statement that she was replaced by Leachman, Sims-Madison points to no evidence that rebuts Dana's showing that it did not replace Sims-Madison, which is not sufficient to survive summary judgment. *See Jones v. SKF USA, Inc.*, 77 F. App'x 866, 869 (6th Cir. 2003) (affirming summary judgment where a plaintiff did not produce evidence that contested the employer's showing that the plaintiff was not replaced when the employer provided affidavits from its officials that the plaintiff's duties where disturbed among other employees). Sims-Madison's conclusory statement on its own is not enough to survive summary judgment. *Jones v. City of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017) ("[C]onclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment."). Thus, record evidence does not show that Sims-Madison was replaced.

### 2. Was Sims-Madison Treated Differently than Similarly Situated Nonprotected Employees?

Dana also argues that Sims-Madison cannot show that she was treated differently than similarly situated nonprotected employees. [DN 22 at 8]. In the disciplinary context of employment discrimination, the plaintiff and the comparator must have engaged in acts of "*comparable seriousness.*" *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006) (citation omitted). In determining if the acts are of "comparable seriousness," the Court may look to factors "such as whether the individuals 'have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating

or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Id.* (citation omitted). But when such factors are not relevant, a court does need not to consider them, rather it can "'make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the [proposed comparable] employee.'" *Id.* (citation omitted).

Sims-Madison identifies seven individuals (Jason Stone, Kay Adams, Carla Piper, Rhonda Chambers, Bethany "Last Name Unknown", Jason Hare, and David Greenham) that she argues are similarly situated, nonprotected employees.[2] [DN 26 at 11–12]. Piper was a supervisor with the role of "Receiving Clerk" [DN 22 at 10, DN 22-1 ¶ 9], which does not make her similarly situated to Sims-Madison. *See Rutherford v. Britthaven, Inc.*, 452 F. App'x 667, 672 (6th Cir. 2011) ("We have previously held supervisory and non-supervisory employees to not be similarly situated."). Piper and Greenham had different job responsibilities that make them not comparable to Sims-Madison. *See id.* ("Moreover, employees with different job responsibilities may not be similarly situated.").

Contrary to her argument, Sims-Madison has not even established that any of her proposed comparators have a similar disciplinary history as her, which is relevant here. *See Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 304 (6th Cir. 2016) ("Differences in

---

[2] Jason Stone is a white man over the age of 40, who got into a verbal alteration with a Black employee, Jackie Foster. [DN 22-1 ¶ 7]. "During Dana's investigation, multiple employees corroborated Mr. Stone's account . . . . Ms. Foster received a 5-day suspension." [*Id.*]. Kay Adams is white and over the age of 40. [*Id.* at ¶ 8]. Another employee believed that Adams cussed at him and asked her to go to the human resources office to discuss her behavior. [*Id.*]. While Adams denied the cussing, she "agreed that her behavior was disrespectful and should not be repeated." [*Id.*]. Carla Piper is a white and over the age of 40. [*Id.* at ¶ 9]. She was a salaried employee who was a Receiving Clerk. [*Id.*]. "Dana received multiple reports from truck drivers outside of Dana alleging that Ms. Piper used bad language and was disrespectful. Ms. Piper received progressive levels of discipline, including one three-day suspension with final warning, and was later terminated for violating her final warning." [*Id.*]. Sims-Madison claims that Rhonda Chambers, Bethany "Last Name Unknown," and Jason Hare (who are white) "got into an altercation where each employee was cussing at the other. No employee was suspended." [DN 26 at 5]. Sims-Madison does not point to any other information to show that they are relevant comparators. Sims-Madison also claims that "Greenham himself has used profane language such as '[a**]' in meetings with employees, including Sims-Madison, without being disciplined in any way." [*Id.*].

experience and disciplinary history, however, establish that Tennial and Fly are not similarly situated."). Except for Piper, the record evidence does not show that Sims-Madison's comparators were even under a "final warning." *See Davis v. Target Corp.*, No. 4:05-CV-105-M, 2007 WL 29446, at *7 (W.D. Ky. Jan. 3, 2007) ("Here, Mr. Dietrick, the only individual to whom Davis compares herself, was not similarly situated to her because he was not on a 'final warning' and had received no disciplinary actions prior to this incident.").

Indeed, Greenham says that during his tenure, "Sims-Madison was the only employee in her position, who reported to her supervisors, who had received several complaints from coworkers about disrespectful behaviors and language, who had been suspended multiple times for the same conduct, and who was under final warning before her termination." [DN 22-1 ¶ 5]. Sims-Madison asserts that "[i]n her sixteen (16) years working at Dana, [she] was the only employee to ever receive a final warning with only a one (1) day suspension." [DN 26 at 5]. Not only does this statement not account for the fact that her discipline was reduced from a five day suspension with intent to discharge to a one day suspension with a "final warning" [DN 18-7, DN 18-8], but also this statement is unsubstantiated. Thus, she cannot show a prima facie case of race or age discrimination.

### B. Legitimate, Nondiscriminatory Reason

Even if Sims-Madison could establish a prima facie case of race or age discrimination, Dana had a legitimate, nondiscriminatory reason for Sims-Madison's termination. Dana claims that she was terminated because she violated her final warning. [DN 22 at 14]. The "final warning" stated that Sims-Madison could not "be disrespectful to coworkers, temporary employees, management, or anyone else." [DN 18-8]. Dana again received complaints about Sims-Madison's "disruptive and inappropriate behavior." [DN 18-10]. However, Sims-Madison

does not challenge whether Dana had a legitimate, nondiscriminatory reason. Instead, Sims-Madison proceeds directly to arguing that Dana's reasoning was pretextual. [DN 26 at 15]. Thus, Dana has met its burden of providing a legitimate, nondiscriminatory reason for Sims-Madison's termination. *See Thompson v. Olympic Stain Co.*, 841 F.2d 1127, 1988 WL 19178, at *3 (6th Cir. 1988) ("[I]t is clear that legitimate, nondiscriminatory reasons— insubordination and disrespectful conduct—were offered by Olympic for Thompson's discharge."); *see also Hall v. Sky Chefs, Inc.*, 784 F. Supp. 2d 811, 822 (E.D. Mich. 2011) ("Defendant Sky Chefs has articulated a legitimate, non-discriminatory reason for terminating Plaintiff's employment—namely, that despite several prior final written advisories, she violated the Sky Chefs code of conduct in the November 12, 2007 incident by making unsubstantiated accusations against a co-worker and yelling at and being disrespectful to a lead worker.")

### C. Pretext

Because Dana offers a legitimate, nondiscriminatory reason for Sims-Madison's termination, the burden shifts back to Sims-Madison to show that the proffered reason is pretext for discrimination. "To carry her burden in opposing summary judgment, [Sims-Madison] must produce sufficient evidence from which a jury could reasonably reject [Dana's] explanation of why it fired her." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009) (citation omitted). In other words, "did the employer fire the employee for the stated reason or not?" *Id.* at 400 n.4. Sims-Madison has failed to show pretext because she has not provided evidence that shows Dana's reason for terminating her (1) had no basis in fact; (2) did not actually motivate the termination; or (3) was insufficient to motivate the termination. *See id.* at 400.

### 1. Was Dana's Reason for the Termination Based in Fact?

Showing that the employer's proffered reason had no basis in fact "implicates evidence that the proffered bases for the plaintiff's discharge never happened." *Flones v. Beaumont Health Sys.*, 567 F. App'x 399, 405–06 (6th Cir. 2014) (citation and internal quotation marks omitted). Sims-Madison simply denies most of the behavior that she was disciplined for doing, which is not enough to show pretext. *Campbell v. Univ. of Akron*, 211 F. App'x 333, 343 (6th Cir. 2006) ("He simply denies that he was insubordinate; that is not sufficient to demonstrate pretext.")

Dana argues that Sims-Madison "does not challenge Dana's honest belief that it reasonably relied on the particularized facts to make its employment decision . . . ." [DN 29 at 8]. Under the honest belief rule, "[a]s long as the employer held an honest belief in its proffered reason, 'the employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial, or baseless.'" *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285–86 (6th Cir. 2012) (citations omitted). "[T]he key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Id.* at 285 (citation omitted).

Nothing in the record suggests that Dana did not make reasonably informed and considered decision before it disciplined Sims-Madison, and then, ultimately, fired her. Sims-Madison's claim that "Greenham specifically admitted that he has no evidence to support the misbehavior allegation against" her is misleading. [DN 26 at 16]. Regarding the complaints Greenham received about Sims-Madison's behavior in August 2018, Greenham said in an email, "So what I have is 2 instances of Jo[h]nnie cussing [sic] other employees but no witnesses to verify the cussing actually occurred." [DN 26-2 at 2]. Greenham had statements from the employees alleging that Sims-Madison cussed, but he did not have corroborating witnesses.

11

[*Id.*]. After Greenham sent that email, he spoke with Sims-Madison about the incidents. [DN 18 Pl. Dep. 10:4–20, 84:4–16, DN 20-1]. Because the Sixth Circuit does not require that Dana's decision-making process to "be optimal or that it [leave] no stone unturned," *Seeger*, 681 F.3d at 285, Dana made a reasonably informed and considered decision before it disciplined Sims-Madison.

### 2. Did Dana's Reason for the Termination Actually Motivate the Termination?

"A plaintiff using the second option 'admits the factual basis underlying the employer's proffered explanation and further admits that such conduct *could* motivate dismissal,' but 'attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant.'" *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003) (citation omitted).

Sims-Madison claims that "[t]he multiple violations of Dana's own disciplinary policy and Collective Agreement with the Union is evidence of pretextual motive." [DN 26 at 16]. Even if it is true that Dana violated the policy, "an employer's failure to follow self-imposed regulations or procedures is generally insufficient to support a finding of pretext." *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 896 (6th Cir. 2020) (citation omitted).

Sims-Madison also argues that her age is what actually motivated her termination. She says that she "was the oldest employee in her work area and Dana wanted her to retire. When it became clear that she was not going to retire, Greenham fired Sims-Madison." [DN 26 at 17]. However, the evidence shows that Dana's inquiry about Sims-Madison's retirement does not make it more likely that Dana fired her because of age. Indeed, "mere inquiries alone" about retirement are not sufficient "to establish an inference of discrimination." *Rosenthal v. Faygo*

*Beverages, Inc.*, 701 F. App'x 472, 480 (6th Cir. 2017) (citing *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 247 (6th Cir. 1997)).

### 3. Was Dana's Reason for the Termination Insufficient to Warrant the Termination?

This category "consists of evidence that other employees, particularly employees outside the protected class, were not disciplined even though they engaged in substantially identical conduct to that which the employer contends motivated its discipline of the plaintiff." *Flones*, 567 F. App'x. at 406 (citation omitted). This third category "is a direct attack on the credibility of the employer's proffered motivation for disciplining the plaintiff and, if shown, permits but does not require, the factfinder to infer illegal discrimination from the plaintiff's prima facie case." *Id.* (citation and internal quotation marks omitted). "In other words, it creates a genuine, triable issue of material fact." *Id.* (citation omitted). As the Court previously explained, Sims-Madison has not shown that other employees were not disciplined even though they engaged in substantially identical conduct as her.

Because Sims-Madison can neither show a prima facie case nor pretext for her age and race discrimination claims, Dana is entitled to judgment as a matter of law.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Dana Commercial Vehicle Manufacturing's Motion for Summary Judgment [DN 22] is **GRANTED**.

*[Signature]*

Joseph H. McKinley Jr., Senior Judge
United States District Court

June 21, 2021

cc: Counsel of Record